CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
for Roanoke
JUL 18 2006
JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SHALENA PIERSON, | ) | CASE NO. 7:03CV00659 |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) | By: B. Waugh Crigler<br>U. S. Magistrate Judge |
| Defendant. | ) | |

This challenge to a final decision of the Commissioner which denied plaintiff's May 17, 1999 claim for supplemental security income benefits under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 1381 *et seq.*, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. For the reasons that follow, the undersigned will RECOMMEND that an order enter AFFIRMING the Commissioner's final decision, GRANTING judgment to the defendant, and DISMISSING this action from the docket of the court.

On January 22, 2001, an Administrative Law Judge ("Law Judge") issued a decision denying the plaintiff's claim for benefits. (R. 360.) The plaintiff was denied review by the Appeals Council, but after she filed suit in United States District Court, the Commissioner sought and was granted voluntary remand due to a lost hearing tape. (R. 230, 238.)

On remand, the Law Judge found that plaintiff was 18 years old on the onset date of her alleged disability, had graduated from high school, had prior work experience as a restaurant

cashier, and had not engaged in substantial gainful activity from October 31, 1998[1] until she obtained substantial gainful employment on September 1, 2003. (R. 9.) The Law Judge also found that the plaintiff had a combination of medical impairments which were the residuals of surgery for rectal cancer (without evidence of metastasis or recurrence of the cancer), including a rectovaginal fistula and adjuvant chemotherapy, as well as a temporary colostomy bag, which collectively were severe, but not severe enough to meet or equal any listed impairment. (R. 12.) The Law Judge determined that the plaintiff's assertion of complete inability to perform any sustained activity for an eight hour day during the closed period was not fully credible, noting that the plaintiff worked as a part-time fast food cashier from November 1999 through May 2000 (though not in substantial gainful employment), became pregnant and had a child whom she cared for, and attended three semesters of college. (R. 11, 14.) Furthermore, in determining the plaintiff's residual functional capacity, the Law Judge did not fully credit the September and October 2000 opinions of the plaintiff's treating physician, though he accorded more weight to the same physician's July 2000 residual functional assessment. (R. 15, 174, 224, 225.) While the Law Judge concluded that the plaintiff could not perform her past relevant work, he found she retained the residual functional capacity for sedentary work, limited by her need for a reasonable accommodation for her colostomy bag. (R. 16.) By application of the Medical-Vocational Guidelines ("grids") to plaintiff's exertional limitations, and by reference to evidence offered at

---

[1] At the conclusion of her brief, plaintiff asks for an award of a closed period of disability from March 31, 1998. (Pl.'s Brief at 9.) However, according to the record, including the plaintiff's testimony (R. 331), her motion for summary judgment and the facts set forth in her brief, plaintiff took the position that her disability onset date is October, 31, 1998. In the event that plaintiff is attempting to amend the onset date, the record simply does not support her assertion. On April 21, 1999, the plaintiff's treating physician, Dr. Kessler, noted that "[p]rior to the last few months of deterioration, [plaintiff] has been rather healthy." (R. at 221.)

2

the hearing by a vocational expert (VE), the Law Judge found gainful sedentary work was available to the plaintiff, and that, therefore, she was not disabled under the Act. (R. 17.)

Plaintiff appealed the Law Judge's decision to the Appeals Council. The Council found no reason to review the Law Judge's decision, denied review and adopted his decision as the final decision of the Commissioner. This action ensued.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the claimant. 20 C.F.R. § 416.927-416.945; *Hays v. Sullivan*, 907 F. 2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F. 2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. 20 C.F.R. § 416.927; *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

In her brief filed in support of her motion for summary judgment, the plaintiff argues that the Law Judge failed to give controlling weight to some of the evidence of plaintiff's treating physician, because there was no "persuasive contradictory evidence" in the record. The defendant argues, on the other hand, that some of the evidence offered from the same treating source was not supported by medical signs or laboratory findings and, in fact, was contradicted by the remainder of the medical evidence in the record. As the regulation now stands, the Commissioner is not required to give the opinion of a treating physician controlling weight when it is unsupported by medically acceptable clinical and laboratory diagnostic techniques, or when

3

it is inconsistent with other substantial evidence in the record[2]. 20 C.F.R. § 416.927(d)(2). Where a treating physician's medical opinion is not controlling, the weight given to it depends on whether the relevant evidence presented supports the opinion. 20 C.F.R. § 416.927(d)(3)[3]. Where the record offers no such supporting evidence, the mere statement by the treating source that the plaintiff is "disabled" or "unable to work" is insufficient, alone, to compel a finding by the Commissioner that the claimant is disabled. 20 C.F.R. § 416.927(e)(1). As the Commissioner contends, the ultimate decision concerning whether a claimant is disabled is to be made by her on the evidence in the record, and she is not bound by the unsubstantiated or naked opinion of a treating physician. 20 C.F.R. § 416.927(e)(3).

The Law Judge gave little weight to the September and October 2000 opinions of the plaintiff's treating physician, Mark S. Currie, M.D., while according more weight to the same physician's July 2000 opinion. In September 2000, Dr. Currie opined that plaintiff would not have been self-supporting for 12 months commencing May 2000 because she could do "no lifting" due to the combination of her rectal surgery, rectovaginal fistula requiring a colostomy bag, and five-month pregnancy. (R. 224.) The Law Judge noted that this was inconsistent with Dr. Currie's assessment in the same evaluation that the plaintiff's ability to care for a child was not hindered by the diagnosis, because the Law Judge was of the view that child care involved some lifting. (R. 15.) Plaintiff also testified that she was able to care for her child. (R. 337.) Dr.

---

[2] Plaintiff's argument is premised on authority which was superseded by the 1991 amendments to 20 C.F.R. § 416.927. *Ward v. Chater*, 924 F.Supp. 53, 56 (W.D.Va. 1996) ("20 C.F.R. § 416.927(d)(2) supersedes the traditional Fourth Circuit treating physician's rule.")

[3] By the same token, the Commissioner must give "good reasons" for and explain the weight given to the treating source opinion. 20 C.F.R. § 416.927(d)(2), (f)(2)(ii).

4

Currie's "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)," completed only one month later, further dispels any notion of an absolute restriction on lifting by revealing that the plaintiff could lift up to ten pounds on a frequent basis. In addition, plaintiff testified that the restrictions Dr. Currie placed on her were identical to those placed on her by her OBGYN during her pregnancy. The evidence further reveals that plaintiff's weakness and weight loss began about the same time she became pregnant. (R. 207.) Thus, the Law Judge could have inferred that the lifting restriction may have been primarily attributable to plaintiff's pregnancy[4] and not her rectovaginal fistula or the residuals of her rectal surgery (R. 14, 220, 336.) Therefore, the Law Judge's decision to not fully credit Dr. Currie's September 2000 opinion is supported by substantial evidence.

In October 2000, Dr. Currie opined that because of the plaintiff's rectovaginal fistula (discovered in August 2000), requiring a colostomy bag, the plaintiff was able to stand and walk only for two hours and could not sit for more than two hours, implying that the plaintiff was able to work only four hours in an eight-hour day. (R. 215, 225-226.) Dr. Currie also noted that plaintiff needed to lie down at unpredictable intervals during a work shift and would be absent from work about three times a month. (R. 227.) However, Dr. Currie provided no explanation for how a rectovaginal fistula could so limit the plaintiff, and the balance of the record provides no supporting medical evidence which might corroborate these limitations between October 2000 and the repair of the rectovaginal fistula in the summer of 2001. (R. 282, 301.)

The only evidence supporting Dr. Currie's October 2000 opinion is the plaintiff's own

---

[4]Plaintiff does not allege that her pregnancy was a disabling impairment, nor would it have met the twelve-month requirement for a disability.

testimony that following her second surgery in August 2000 she was disabled by "psychological discomfort," or her fear that the colostomy bag would leak and give off a detectable odor, as well as severe fatigue requiring her to lay down several times a day. (R. 332-333, 337.) Recognizing the plaintiff's colostomy bag could produce psychological discomfort (as best the undersigned understands that effect) and assuming her rectovaginal fistula could produce fatigue[5], there is substantial evidence for the Law Judge to have found that the plaintiff's assertions regarding the disabling severity of her symptoms are not credible. The plaintiff testified that she feared her colostomy bag would leak at her workplace but that the bag had never leaked (R. 332). She was prescribed pouch deodorant for the odor and offered no evidence that any other person was affected by the odor. (R. 298.) The plaintiff also testified that she never received treatment for her fatigue, and that she was able to care for her child and attend college full-time. (R. 337, 342-345.) *See* 20 C.F.R. § 416.929(c)(3)(i), (v). Finally, the plaintiff testified that she specifically chose to attend school instead of going back to work during the relevant period in order to "better [her]self," not because she was unable to work. (R. 345.)

The Law Judge was not required to give controlling weight to the relevant portions of the treating physician's September 2000 or October 2000 opinions, since neither opinion was consistent with other substantial evidence in the record, nor supported by objective medical evidence or even minimal explanation, appearing to rely solely on the plaintiff's discounted subjective claims. In contrast, the Law Judge's decision to give the treating physician's July 2000 opinion greater weight is supported by the consistency of that opinion with the remainder of

---

[5]Plaintiff points to her chronic microcytic anemia as a contributing factor of her fatigue. (Pl.'s Brief at 8.) However, in Dr. Currie's assessment of plaintiff's residual functional capacity, his only reference is to her rectovaginal fistula.

6

the record.

Plaintiff also alleges in general, but does not argue, that the Law Judge failed to properly consider the medical evidence in the record. Other than the plaintiff's assertion that the Law Judge improperly weighed the treating physician's opinion, which was disposed of above, the plaintiff points to no other instance of alleged error, nor does the undersigned find any such instance.

Finally, plaintiff asserts that the Law Judge failed to consider all of her medically documented impairments. The plaintiff does not specify which impairments the Law Judge allegedly neglected to consider, but mentions chronic microcytic anemia, which is not explicitly addressed in the Law Judge's opinion. The plaintiff, however, "must furnish medical and other evidence that we can use to reach conclusions about [her] medical impairment(s);" and if material, such evidence "must be furnished about the effects of [her] impairment(s) on [her] ability to work." 20 C.F.R. § 416.912(a). Anemia was never considered a limiting impairment by Dr. Currie, who opined in July 1999 that the plaintiff's anemia "has improved steadily with time." (R. 87.) There is no evidence that plaintiff ever was treated for anemia following her first surgery in April 1999. Moreover, none of those who examined or treated the plaintiff placed any restrictions on her activities on account of her anemia. Accordingly, the Law Judge's failure to expressly consider anemia in his residual functional capacity assessment was neither erroneous nor unsupported by substantial evidence.

For these reasons, it is RECOMMENDED that an order enter AFFIRMING the Commissioner's final decision, GRANTING judgment to the defendant, and DISMISSING this action from the docket of the court.

7

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ _____
U.S. Magistrate Judge

July 18, 2006
Date

8